FILED
COURT OF APPEALS
DIVISION II

2015 MAY -5 AM 9:25

STATE OF WASHINGTON

BY_____
DEPUTY

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45190-5-II |
| Respondent, | |
| v. | |
| CORY BRENT BREIDT, | PUBLISHED OPINION |
| Appellant. | |

LEE, J. — The trial court found Cory Brent Breidt guilty of failure to register as a sex offender. Breidt appeals, arguing that the failure to register statute is unconstitutionally vague as applied to him because the statute does not adequately define "change," "residence," "residence address," or the phrase "changes his or her residence address." We hold that the individual terms "change," "residence," and "residence address" are sufficiently defined by either prior case law or their ordinary meaning. We further hold that the entire phrase "changes his or her residence address" is sufficiently clear that a person of common intelligence would understand that being evicted and moving out of a house involved a change of residence address. As a result, we hold that Breidt has failed to meet his burden to prove the failure to register statute is unconstitutionally vague as applied to him, and we affirm.

FACTS

On August 21, 2012, Breidt registered as a sex offender with the Cowlitz County Sheriff's Office and listed his residence on Southwest Second Avenue in Kelso, Washington. He did not

submit a change of address to the Cowlitz County Sheriff between November 1, 2012 and February 4, 2013.

On November 27, 2012, Kelso Police Detective Rich Fletcher went to that address to verify that Breidt was residing there. Fletcher made contact with Porfitio Chavez, who identified himself as a resident of the house. Fletcher was unable to make contact with Breidt at that residence address and relayed that information to the Cowlitz County Sherriff's Department. The State charged Breidt with failure to register as a sex offender.

Breidt waived his right to a jury trial and the case proceeded to a bench trial. At trial, Chavez testified that he allowed Breidt to reside with him at his house on Southwest Second Avenue after Breidt got out of prison in August or September 2012. Breidt slept on the couch, got his mail, took his meals, and kept his belongings there. In mid-October, Chavez gave Breidt two weeks' notice to move out by November 1. Breidt vacated the residence and took most of his belongings with him. After November 1, Chavez did not allow Breidt to stay at the residence. Breidt did not live at the residence after November 1, but Breidt would come over to the house to "hang out for a little bit and leave." Report of Proceedings (RP) at 14. Chavez stated he did not think Breidt had spent the night at Chavez's after November 1, but could not remember for sure. Chavez also testified that after he made Breidt leave the residence, Chavez would put "return to sender" on Breidt's mail that came to the residence. RP at 16. If Breidt came by the house and Chavez had not yet returned the mail, Chavez would give Breidt his mail.

The trial court found Breidt guilty of failure to register as a sex offender. Breidt appeals.

No. 45190-5-II

## ANALYSIS

Breidt argues that the sex offender registration statute is unconstitutionally vague as applied to him because it does not adequately define what constitutes a change of one's residence address. We disagree.

RCW 9A.44.130(4)(a) provides:

> If any person required to register pursuant to this section changes his or her residence address within the same county, the person must provide, by certified mail, with return receipt requested or in person, signed written notice of the change of address to the county sheriff within three business days of moving.

We hold that all of the individual terms that Breidt challenges are defined by either prior case law or their ordinary meaning. And, the entire phrase "changes his or her residence address" is sufficiently clear to inform a person of common intelligence what conduct is required or proscribed.

A.   STANDARD OF REVIEW

We review the constitutionality of a statute de novo. *State v. Watson*, 160 Wn.2d 1, 5-6, 154 P.3d 909 (2007). We presume that statutes are constitutional; the defendant bears the burden of proving the statute is vague beyond a reasonable doubt. *State v. Coria*, 120 Wn.2d 156, 163, 839 P.2d 890 (1992). When the statute at issue "does not involve First Amendment rights, we evaluate the vagueness challenge by examining the statute as applied under the particular facts of the case." *State v. Jenkins*, 100 Wn. App. 85, 89, 995 P.2d 1268, *review denied*, 141 Wn.2d 1011 (2000).

Due process requires statutes to provide fair notice of the conduct they require or proscribe. *Watson*, 160 Wn.2d at 6. "A statute fails to provide the required notice if it 'either forbids or

requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Id.* at 7 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)). Therefore, to prove the failure to register statute is unconstitutionally vague, Breidt "must show beyond a reasonable doubt that either (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed, or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *Coria*, 120 Wn.2d at 163.

Breidt only argues that the terms of the statute are not sufficiently defined. Specifically, Breidt argues that the statute is unconstitutionally vague because it fails to define the terms "residence," "change," and "residence address." Br. of Appellant at 5-6. In addition, Breidt argues that the entire phrase "changes his or her residence address" is vague. Br. of Appellant at 7.

When a statute does not define a term, the statute is not automatically deemed unconstitutionally vague. *Jenkins*, 100 Wn. App. at 90. Instead, when terms are not defined in a statute, they are given their ordinary meaning. *Id.*

B.     "RESIDENCE"

Addressing the term "residence," Breidt recognizes that several cases have applied the ordinary meaning of the term "residence," but appears to argue that, because courts have looked at "a variety of factors to determine whether or not a particular dwelling qualifies as a residence," a person of ordinary intelligence would not be able to understand the meaning of the term residence. Br. of Appellant at 6. We disagree.

The term "residence" is commonly understood as "a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit." WEBSTER'S THIRD NEW INT'L DICTIONARY 1931 (1969). In *State v. Pickett*, 95 Wn. App. 475, 478, 975 P.2d 584 (1999), Division One of this court held that it was adopting this "ordinary meaning" of residence: "the place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." We relied on the "ordinary meaning" articulated in *Pickett* in *Jenkins*, 100 Wn. App. at 91. Thus, contrary to Breidt's argument, "residence" has been sufficiently defined such that an ordinary person would understand that the term to mean a place where a person intends to return to live as opposed to a place that he or she is just visiting.

The term "residence" is sufficiently definitive to allow an ordinary person to understand what the term means. Breidt fails to show beyond a reasonable doubt that the term "residence" is unconstitutionally vague.

C.     "RESIDENCE ADDRESS" AND "CHANGE"

Breidt also argues that the statute does not adequately define the terms "change" or "residence address." We disagree.

In *Jenkins*, the term "address" was not defined in the statute. *Jenkins*, 100 Wn. App. at 90. We held that the term "[address] has been defined in Washington as 'the place where mail or other communications will reach a person,' which 'may be other than a person's residence.'" *Id.* (quoting *State v. Morgan*, 32 Wn. App. 236, 237, 646 P.2d 1387 (1982)). Although the *Jenkins* court established the plain meaning of the term "address," it determined that its use was vague in former RCW 9A.44.130(3) (1998) because former RCW 9A.44.130(3) required a sex offender to

provide an address when registering but it did not specify whether the sex offender was required to provide a mailing address or a residence address. *Id.* at 91.

The vagueness problem identified in *Jenkins*, as it relates to the term "address" does not exist here. RCW 9A.44.130(4)(a) specifically references a "residence address." Therefore, there is no confusion regarding whether the address refers to a residence address or a mailing address.[1] Breidt accurately observes that, in RCW 9A.44.130(4)(a), the legislature used the phrase "residence address" rather than "fixed residence," a term used elsewhere within RCW 9A.44.130. Breidt asserts that, therefore, "residence address" must mean something different than "fixed residence." This assertion is correct. However, we decline to reach the conclusion that Breidt would like this court to reach based on that assertion.

As explained above, the courts have already established the plain meaning of the terms "residence" and "address." The plain meaning of the phrase "residence address" can be determined by combining the plain meanings of "residence" and "address." Accordingly, "residence address" is the designation of "the place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *Pickett*, 95 Wn. App. at 478.

Breidt further argues that "change" is not adequately defined in the statute. "Change" is defined as: "to make different" or "to replace with another." WEBSTER'S, *supra*, at 373. Breidt offers no discernible argument as to why the dictionary definition of "change" is not an appropriate

---

[1] The legislature corrected the deficiency identified in *Jenkins* and the relevant part of the statute now reads, "A person required to register under this section must provide the following information when registering . . . (ii) complete and accurate residential address or, if the person lacks a fixed residence, where he or she plans to stay." RCW 9A.44.130(2)(a).

meaning to assign to the word within the sex offender registration statute or how the ordinary meaning fails to sufficiently define the term. Thus, Breidt's argument that the term "change" is unconstitutionally vague fails.

D.    "CHANGES HIS OR HER RESIDENCE ADDRESS"

Similarly, Breidt argues the entire phrase "changes his or her residence address" is vague. Br. of Appellant at 7. We disagree.

Breidt points out that, in *Jenkins*, we held that the phrase "changes his or her residence address" was unconstitutionally vague. 100 Wn. App. at 90. However, as discussed above, *Jenkins* involved a challenge by a homeless sex offender under the *prior* version of the statute which did not provide specific procedures for homeless sex offenders to register. *Id.* at 91. The *Jenkins* court noted that, because the homeless did not have a "residence address," people "must necessarily guess as to the types of living situations that the term 'residence' encompasses." *Id.* at 91. In other words, under the former statute, determining that "residence address" included the homeless or people without a fixed address, required people to guess that the statute applied to them.

But after the legislature amended former RCW 9A.44.130 to include procedures specifically for people without a fixed address, the vagueness problem that was identified in *Jenkins* no longer exists. If people are without a fixed address, there are provisions that explicitly apply to them. And, if a person goes from having a residence address to being homeless, it is clear that the provisions regarding residences no longer apply. Instead, the procedures for their registration are governed by the procedures for sex offenders with no fixed residence. Therefore, the phrase "changes his or her residence address" can only apply when a person establishes a

different residence or replaces one residence with another. Applying the same basic principles articulated above, the phrase "changes his or her residence address" means when a person makes a different location "the place where a person lives as either a temporary or permanent dwelling, a place to which one intends to return, as distinguished from a place of temporary sojourn or transient visit." *Pickett*, 95 Wn. App. at 478.

Here, Breidt was told to move out of Chavez's house by November 1, 2012. He took the majority of his belongings with him. Chavez testified that Breidt never resided at the house after he was told to move out. And, although Breidt still received mail at the house, Chavez had started returning Breidt's mail to sender. There is no evidence that Breidt intended to return to Chavez's home for more than a transient visit. Therefore, Chavez's home could not be Breidt's residence. If Chavez's home was no longer Breidt's residence, then Breidt's residence address had to have been somewhere else. A person of common intelligence would have understood that being evicted and moving out of a house was a change of residence address that required updating one's sex offender registration with the sheriff's office.

Breidt asserts that the phrase "changes his or her residence address" is vague because a change of one's residence "could occur when a person ceases to pay rent, receives notice of eviction, sleeps some predetermined number of nights at another location, changes his/her mailing address, or leaves without intending to return to the original address." Br. of Appellant at 7. Breidt is correct—there are several ways in which conduct could be considered a change of residence address. However, the requirement of sufficient definiteness "does not demand 'impossible standards of specificity or absolute agreement,' and it permits some amount of imprecision in the language of the statute." *Jenkins*, 100 Wn. App. at 90 (quoting *Coria*, 120 Wn.2d at 163). It is

possible that there may be some situations in which it is not absolutely clear that a person has changed his or her residence address. But, as explained above, the meaning of "changes his or her residence address" is sufficiently clear to provide a person of common intelligence with an understanding of when a sex offender is required to notify the sheriff's office that he or she has changed his or her residence.

Breidt has failed to meet his burden to demonstrate that the sex offender registration statute is unconstitutionally vague as applied. Accordingly, we hold that under the current statute, "changes his or her residence address" is not unconstitutionally vague as applied, and we affirm Breidt's conviction.

Lee, J.

We concur:

Maxa, P.J.

Melnick, J.